UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JOSE BEZERRA DA SILVA,<br>　　Petitioner,<br><br>　　v.<br><br>TODD BLANCHE, *U.S. Attorney*<br>*General*; MICHAEL NESSINGER,<br>*Warden of the Wyatt Detention*<br>*Facility*; DAVID T. WESLING, *Field*<br>*Office Director of Enforcement and*<br>*Removal Operations, Boston Field*<br>*Office*; U.S. IMMIGRATION AND<br>CUSTOMS ENFORCEMENT; and<br>MARKWAYNE MULLIN, *U.S.*<br>*Secretary of Homeland Security*,<br>　　Respondents. | No. 26-cv-360-JJM-PAS |

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Jose Bezerra Da Silva has filed this Amended Habeas Petition[1] under 28 U.S.C. § 2241.  ECF No. 8.  He is currently in the custody of Immigration and Customs Enforcement ("ICE") at the Donald W. Wyatt Detention Facility ("the Wyatt") in Central Falls, Rhode Island, and he argues, among other things, that ICE does not have the lawful authority to detain him.  *Id.*  The Government has moved to dismiss Mr. Da Silva's Amended Petition, claiming that he has failed to show that his detention is unlawful.  ECF No. 9.

---

[1] Mr. Da Silva filed an initial habeas petition, *see* ECF No. 4, which he has since amended.  ECF No. 8.

For the reasons that follow, the Court GRANTS Mr. Da Silva's Amended Petition and ORDERS his immediate release, subject to reasonable conditions of supervision.

## I.    BACKGROUND

### A.    Statutory and Regulatory Framework

Starting with the basics, the Government's power to detain a noncitizen must be grounded in a specific provision of the Immigration and Nationality Act ("INA"). *See, e.g.*, *Gonzalez Lopez v. Wesling*, 828 F. Supp. 3d 284, 288 (D.R.I. 2026).  Two statutory provisions, 8 U.S.C. § 1226(a) and 8 U.S.C. § 1231(a), generally authorize the Department of Homeland Security ("DHS") to detain noncitizens either before or after they are ordered removed from the United States.

#### 1.    Detention Under Section 1226(a)

Under Section 1226(a), the Government may detain certain noncitizens "already in the country" during the pendency of their removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).  Section 1226(a) is often called the "discretionary detention statute" because it permits—but does not require—the Government to arrest and detain a noncitizen "[o]n a warrant issued by the Attorney General," or their designees, "pending a decision on whether the [noncitizen] is to be removed from the United States." *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 304 (D. Mass. 2025).

#### 2.    Detention Under Section 1231(a)

By contrast, Section 1231(a) of the INA authorizes the Government to detain noncitizens who have been "ordered removed" from the United States. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022) (quoting 8 U.S.C. § 1231(a)). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" *Id.* at 578 (quoting 8 U.S.C. § 1231(a)(1)(A)).

The "removal period" begins on the "latest" of three dates: (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order"; or (3) "[i]f the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). Noncitizens are subject to mandatory detention during this 90-day removal period. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)).

"If the noncitizen is not removed within the 90-day removal period, then they are only subject to discretionary detention, meaning they "'may be detained" or may be released under terms of supervision.'" *Gonzalez Lopez*, 828 F. Supp. 3d at 289 (quoting *Arteaga-Martinez*, 596 U.S. at 575 (quoting 8 U.S.C. § 1231(a)(6))); *see also* 8 U.S.C. § 1231(a)(3) (providing that, if a noncitizen "is not removed within the

3

removal period, then the noncitizen, "pending removal, shall be subject to supervision under regulations prescribed by [the Secretary of Homeland Security]"[2]).

### 3. Stays of Removal with Federal Courts of Appeals

Generally speaking, a stay is defined as "[t]he postponement or halting of a proceeding, judgment, or the like" and "[a]n order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding." *Stay*, Black's Law Dictionary (9th ed. 2009). In the immigration context, a noncitizen can seek a stay of removal with a federal court of appeals to "prevent [their removal] order from taking effect and therefore block removal while adjudicating the petition." *Nken v. Holder*, 556 U.S. 418, 425 (2009); *see also* 8 U.S.C. § 1252(b)(3)(B). The First Circuit provides a noncitizen who files a timely stay motion with a temporary automatic stay of removal that lasts for a period of ten business days. *See* 1st Cir. Loc. R. 18.0. That stay can be extended if the court grants the underlying stay motion. *See Nken*, 556 U.S. at 434 (setting forth the legal standard to be applied by the courts of appeals).

### B. Factual and Procedural History

Mr. Da Silva is a citizen of Brazil who entered the United States without inspection and who has resided in the country since at least 2001.[3] ECF No. 8 at 6; ECF No. 9 at 2. On March 13, 2001, an immigration judge ("IJ") ordered Mr. Da Silva

---

[2] Though the statute refers to the "regulations prescribed by the Attorney General," this authority now belongs to the Secretary of Homeland Security. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 n.3 (2020) (explaining that 6 U.S.C. § 251(2) transferred the authority over "[t]he detention and removal program" to the Department of Homeland Security).

[3] The Government claims that Mr. Da Silva entered the United States a year later in 2000. ECF No. 9 at 2.

removed *in absentia* to Brazil.[4]  ECF No. 8 at 2; *see also* ECF No. 9-1 at 2.  Mr. Da Silva nevertheless remained in the United States, and he took up residence in Massachusetts.  ECF No. 8 at 6.

Sometime in 2012, the Government contends that Mr. Da Silva had a falling out with his pastor, which resulted in the pastor reporting him to immigration authorities.  ECF No. 9 at 2.  ICE officials later arrested Mr. Da Silva and took him into custody.  *Id.*  ICE acknowledged, however, that because it "ha[d] not effected [his] deportation or removal during the period prescribed by law," the agency would place him on supervised release and permit him "to be at large" under a set of conditions, including regular check-ins with ICE.  ECF No. 9-1 at 2 (displaying Mr. Da Silva's OSUP form[5]).  Mr. Da Silva appeared for regular check-ins with ICE for the next fourteen years.  *Id.*

In that time, Mr. Da Silva has extensively litigated his *in absentia* removal order before the Board of Immigration Appeals ("BIA") and the U.S. Court of Appeals for the First Circuit ("First Circuit").  *See Da Silva v. Blanche*, No. 26-1616 (1st Cir. May 26, 2026) ("Appeal 26-1616"); *Da Silva v. Garland*, No. 20-1714, 2023 WL

---

[4] A noncitizen's "failure to appear at a scheduled immigration hearing results in mandatory entry of an *in absentia* removal order if the [G]overnment establishes that written notice of the hearing was given and that the [noncitizen] is removable as charged."  *Aragon-Munoz v. Mukasey*, 520 F.3d 82, 85 (1st Cir. 2008).

[5] The particular OSUP form that ICE used was Form I-220B, *see* ECF No. 9-1 at 2, which is typically used for the release of noncitizens under Section 1231(a).  *See Da Silva v. Nessinger*, No. 1:26-cv-00357-MSM-AEM, 2026 WL 2082614, at *2 (D.R.I. July 20, 2026).  By contrast, Form I-220A is another OSUP form that is used for the release of noncitizens subject to Section 1226(a).  *See De Andrade v. Moniz*, 802 F. Supp. 3d 325, 328 (D. Mass. 2025).

4065793 (1st Cir. June 14, 2023) ("Appeal 20-1714"); *Da Silva v. Barr*, No. 18-1075 (1st Cir.) (denied June 14, 2023); *In re Da Silva*, No. 17-2086 (1st Cir.) (dismissed May 4, 2018); *Da Silva v. Holder*, No. 14-1662 (1st Cir.) (dismissed Nov. 21, 2014).[6] Two of those appeals, Appeal 26-1616 and Appeal 20-1714, remain pending.  In 2020, the First Circuit issued a stay of removal in Mr. Da Silva's case, and that stay remains in effect as of this writing.  *See Da Silva v. Blanche*, No. 26-1616 (1st Cir. June 24, 2026) ("[T]he stay of removal entered in Appeal 20-1714 on August 12, 2020, remains in effect[.]").

On May 21, 2026, as he was attending a regularly scheduled check-in with ICE, immigration authorities again arrested Mr. Da Silva and informed him that his supervised release had been revoked.  ECF No. 8 at 2; *see also* ECF No. 9-2 at 2 (displaying Mr. Da Silva's "Notice of Revocation of Release").  His Notice of Revocation of Release states: "It is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal."  ECF No. 9-2 at 2.  The Notice further provides: "ICE is seeking a travel document to effect your expeditious removal to Brazil."  *Id.*  Mr. Da Silva has since been transferred to the Wyatt in Central Falls, Rhode Island, where he currently remains detained.  ECF No. 8 at 2.

Mr. Da Silva filed this Amended Petition a few weeks later on July 20, 2026. *Id.* The Government has since moved to dismiss the Amended Petition.  ECF No. 9.

---

[6] A court may take judicial notice of judicial decisions from other courts.  *See Berríos-Romero v. Estado Libre Asociado de P.R.*, 641 F.3d 24, 27 (1st Cir. 2011).

## II.   DISCUSSION

In his Amended Petition, Mr. Da Silva raises several challenges to his continued detention. *See* ECF No. 8 at 17-25, 26-27 (arguing that ICE's revocation of Mr. Da Silva's supervised release violates the Fifth Amendment's Due Process Clause, the Administrative Procedure Act, and the *Accardi* Doctrine). The Court focuses its attention on only one of those challenges, which is that ICE's detention of Mr. Da Silva is *ultra vires* because "[t]here is no statute, constitutional provision, or other source of law that authorizes [ICE] to detain [him]."[7]  ECF No. 8 at 26. The Government dismisses this claim as "utterly frivolous," arguing that it has "'the statutory authority to detain and remove noncitizens . . . who have a final order of removal.'"  ECF No. 9 at 15 (quoting *Lageyre - Ravelo v. Lyons*, No. 2:25-cv-1171-KCD-DNF, 2026 WL 575183, at *4 (M.D. Fla. Mar. 2, 2026)).

But even though the Government views it as such, the Court does not agree that Mr. Da Silva's claim is "utterly frivolous."  At the heart of any habeas claim brought under Section 2241 is whether the Government is holding an individual "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  And an agency's action is *ultra vires* when it goes "beyond the scope of power allowed or granted . . . by law."  *Ultra Vires*, Black's Law Dictionary (9th ed. 2009).  The Court therefore construes Mr. Da Silva's argument as a challenge

---

[7] That is not to say that the other claims advanced by Mr. Da Silva in his Amended Petition are without merit.  The Court will simply address whether the statutory authority that the Government claims—Section 1231(a)—authorizes Mr. Da Silva's detention and, since that issue is dispositive, will only address that portion of the Amended Petition.

7

to the statutory authority that the Government cites—Section 1231(a)—to justify his detention. Thus, the relevant question is whether Mr. Da Silva's detention is authorized by Section 1231(a).[8]

To start, the Government alleges that it can detain Mr. Da Silva under Section 1231(a) because he is subject to an *in absentia* removal order. *See* ECF No. 9 at 6, 9, 15; *see also* ECF No. 9-1 at 2. To detain a noncitizen under this provision of the INA, recall that the noncitizen must be "ordered removed." *Arteaga-Martinez*, 596 U.S. at 575. Once the noncitizen is "ordered removed," the clock starts ticking for DHS and the noncitizen must be removed from the United States within the 90-day "removal period." *Id.* at 578. There are certain circumstances, however, under which the 90-day removal period—and, by extension, the applicability of Section 1231(a)— may be postponed or suspended. *See, e.g., D'Ambrosio v. McDonald*, 793 F. Supp. 3d 271, 276 (D. Mass. 2025).

As mentioned, Section 1231(a) provides that "[t]he removal period begins on the latest of the following":

(i)     The date the order of removal becomes administratively final.

(ii)    *If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.*

---

[8] Though the parties only briefly locked horns over the applicability of Section 1231(a), "'[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law,' even where the proper construction is that a law does not govern because it is not in force." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)).

(iii)     If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added).

According to the Government, Mr. Da Silva can be detained under Section 1231(a) because his *in absentia* removal order is "final" following the BIA's denial of his motion to reopen his removal proceedings.  *See* ECF No. 9 at 4, 15.  Even assuming this is true,[9] a final removal order is but one circumstance that "triggers" the start of the removal period.  *Guzman Chavez*, 594 U.S. at 533, 545; *see also* 8 U.S.C. § 1231(a)(1)(B)(i).  Another trigger for the removal period is "a court order lifting a stay."[10]     *Guzman Chavez*, 594 U.S. at 533 n.5 (citing 8 U.S.C. § 1231(a)(1)(B)(ii)).

As relevant here, the First Circuit has stayed Mr. Da Silva's removal order as of August 12, 2020.  *See Da Silva v. Blanche*, No. 26-1616 (1st Cir. June 24, 2026).  And as the First Circuit confirmed just weeks ago, that stay of removal still remains in place—six years later—while the court considers Mr. Da Silva's underlying appeal concerning his motion to reopen.  *Id.*

---

[9] The parties are still litigating Mr. Da Silva's motion to reopen before the First Circuit.  *See Da Silva v. Blanche*, No. 26-1616 (1st Cir. June 24, 2026) (denying without prejudice the Government's motion to dismiss Mr. Da Silva's appeal and setting a briefing schedule for the parties).  And if the First Circuit ultimately grants the motion to reopen, this "would necessarily extinguish the finality of the removal order." *Nken*, 556 U.S. at 429 n.1.

[10] The third trigger, which is the noncitizen's "release from non-immigration detention or confinement," does not apply here.  *Guzman Chavez*, 594 U.S. at 533 n.5 (citing 8 U.S.C. § 1231(a)(1)(B)(iii)).

Notably, "[i]f a removal order has been stayed, then 'the individual subject to the order is not within any "removal period."'" *D'Ambrosio*, 793 F. Supp. 3d at 276 (quoting *Reid v. Donelan*, 64 F. Supp. 3d 271, 276-77 (D. Mass. 2014)). This is so because, once again, " [t]he removal period begins on the *latest* of" three occasions, including the "date of the court's final order." 8 U.S.C. § 1231(a)(1)(B) (emphasis added).

Thus, because the First Circuit has not yet issued a final order in Mr. Da Silva's case, then it follows that Section 1231(a) is not applicable to his particular circumstances. *See, e.g.*, *D'Ambrosio*, 793 F. Supp. 3d at 276; *Reid*, 64 F. Supp. 3d at 276-77; *Dondoni v. Moniz*, No. 1:25-cv-13438-IT, 2025 WL 3470501, at *3 (D. Mass. Dec. 3, 2025) ("Given the First Circuit's . . . Order staying Petitioner's removal, the 'latest' date for beginning the removal period has not yet occurred and will not start until that court issues a 'final order.' Accordingly, Section 1231 is inapplicable to Petitioner."). Until the First Circuit has rendered its decision, Mr. Da Silva's detention is instead governed by Section 1226(a). *See Reid*, 64 F. Supp. 3d at 276; *Dondoni*, 2025 WL 3470501, at *3 ("8 U.S.C. § 1226(a) governs Petitioner's detention while the stay remains in place.").

Indeed, nearly every federal court of appeals that has considered this issue has found that Section 1226(a)—not Section 1231(a)—governs a noncitizen's detention in this particular situation. *See, e.g.*, *Hechavarria v. Sessions*, 891 F.3d 49, 56 (2d Cir. 2018) ("Section 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review."); *Leslie v. Att'y Gen. of the U.S.*, 678 F.3d 265,

10

270 (3d Cir. 2012) ("[E]very circuit to consider the issue has held that § 1226, not § 1231, governs detention during a stay of removal."), *abrogated in part and on other grounds by Jennings v. Rodriguez*, 583 U.S. 281, 305-06 (2018); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057-58 (9th Cir. 2008) (holding that the Government's statutory authority to detain a noncitizen "whose administrative review is complete but whose removal is stayed pending the court of appeals' resolution of his petition for review, must be grounded in § 1226(a)"); *cf. Bejjani v. Immigr. & Naturalization Serv.*, 271 F.3d 670, 689 (6th Cir. 2001) (finding that the Government lacked the authority to detain a noncitizen under Section 1231(a) where the court had issued a stay of removal and had not rendered a final order in the noncitizen's case, though failing to consider the applicability of Section 1226(a)), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 36-38 (2006). *But see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.4 (11th Cir. 2002) (assuming that Section 1231(a) governed a noncitizen's detention during a four-month judicial stay of removal without considering the applicability of Section 1226(a)).

In sum, the Court agrees with Mr. Da Silva that the Government lacks the power to detain him under its claimed statutory authority, Section 1231(a). The Court finds that Mr. Da Silva's detention is instead governed by Section 1226(a). By continuing to hold him under a provision of the INA that is inapplicable to his particular circumstances, the Government is acting beyond the scope of its lawful authority, and its actions are therefore *ultra vires*.

11

Accordingly, the Court GRANTS Mr. Da Silva's Amended Petition. As a remedy, the Court will order that Mr. Da Silva be immediately released from ICE custody, subject to reasonable conditions of supervision.[11]

## III.   CONCLUSION

For the reasons stated, the Court GRANTS Mr. Da Silva's Amended Petition. ECF No. 8. The Government is hereby ORDERED to **release Jose Bezerra Da Silva immediately** under reasonable conditions of supervision.

Should it be necessary, the Government is permitted to transfer Mr. Da Silva to ICE's Boston Field Office in Burlington, Massachusetts to process his release, allow for any return of property, and set reasonable conditions of supervision. However, effectuating this transfer shall not in any way impede Mr. Da Silva's **immediate release**.

Finally, the Government shall **file a notice of compliance** with this Order within twenty-four (24) hours of Mr. Da Silva's release.

---

[11] As mentioned, ICE initially released Mr. Da Silva on conditions of supervision pursuant to Form I-220B, which is the OSUP form used for noncitizens subject to Section 1231(a). *See Da Silva*, 2026 WL 2082614, at *2. A different OSUP form, Form I-220A, is the one used by ICE to release noncitizens on supervised release who are themselves subject to Section 1226(a). *See De* And*rade*, 802 F. Supp. 3d at 328. Given that he too is subject to Section 1226(a), ICE may release Mr. Da Silva on supervised release pursuant to Form I-220A, if it so chooses.

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court